Clerk, please call the first case. 11-3174, Leon Trimble v. Peopleease Corp. et al. Attorney for the appellant. Good morning, Your Honor. Miriam Hallbauer with Legal Assistance Foundation on behalf of Mr. Trimble. Good morning. Appellee. Good morning, Your Honor. Lee Laudacino on behalf of the appellee, Peopleease Corporation. Okay, we're going to allow both of you 15 minutes of time to orally argue. The appellant, save time from that 15-minute portion for your rebuttal. Okay. You may proceed. Thank you, Your Honor. May it please the Court. For purposes of this appeal, it's not disputed that Leon Trimble was wrongfully terminated from his employment as a truck driver. He had two employers, A&T and Peoplelease, the employee leasing company, and he was fired from both because he refused his supervisor's order to drive his 18-wheel truck when it wouldn't have been safe to do so. The Whistleblower Act prohibits an employer from retaliating against an employee for refusing to do something that would result in violation of the law. The Tort of Retaliatory Discharge, similarly, makes an employer liable for retaliation against an employee in violation of a clear public policy. Mr. Trimble was fired from Peoplelease in violation of the law. Peoplelease was Mr. Trimble's employer for purposes of these laws. Peoplelease has offered nothing to absolve it of liability. It has sought to avoid liability for the wrongful termination through what has been an evolving series of denials. Their story has changed throughout the litigation. First, Peoplelease claimed, and it did so emphatically and repeatedly, that it simply did not terminate Mr. Trimble. We did not fire him, Peoplelease said. And we had no involvement with AMT's termination of him. Now Peoplelease admits that, yes, it did in fact terminate Mr. Trimble based on this incident where he refused to drive. And now Peoplelease is basing its disclaimer of liability solely on the claim that Mr. Trimble failed to present evidence that Peoplelease had direct knowledge of not just of the termination, not just of the refusal to drive, but of the reason for the refusal to drive. So Mr. Trimble has presented two arguments for review. First, that Peoplelease is subject to liability based on its status as an employer. It was Mr. Trimble's joint employer, both under the plain language of the act and under the tort of retaliatory discharge and basic agency principles that apply to that tort. So it really doesn't matter if Peoplelease had direct involvement or not in the discharge. Secondly, even if it did matter, and even if Mr. Trimble were required to show direct participation, he did present evidence sufficient at least to give rise to an issue of fact regarding whether Peoplelease directly participated. So I want to talk about the first point first. Since it's undisputed for purposes of this appeal that Mr. Trimble did suffer retaliatory discharge, he was wrongfully fired. The only question is, was Peoplelease Mr. Trimble's employer? Under the plain language of the Whistleblower Act, employer is broadly defined basically as any entity that has employees and, says the statute, any person acting within the scope of his or her authority. So under that plain language, it obviously contemplates that there could be more than one employer. It obviously contemplates that agency principles apply. Counsel, can I ask you a question about the procedural issues in this case?  The court originally granted the motion, is that right? Yes. And then on a motion to reconsider, reconsidered. No, I'm sorry, the court originally denied the motion for summary judgment, and then on a motion to reconsider, reconsidered. Now, let me ask you this question. As far as the affidavits that were presented on the motion to reconsider, was there any newly discovered evidence that wasn't available to the movement before that? No, the evidence that was presented on the motion to reconsider was not newly, it was not newly discovered. It was evidence that they could have presented at any point. That's what I'm trying to get to. On a motion to reconsider, it's got to be newly discovered evidence, a change in the law, or the court's error in applying existing law. Was any of that present in those affidavits that were presented on the motion to reconsider? None of those were present, but the court permitted the affidavits to be considered. Thank you. The one thing that was new was the information found at the footnote in the blue brief where the people he submitted said, oh, by the way, we were mistaken earlier, trial court judge, when we said we didn't fire him. We did fire him, right? Well, that was new to the court, but obviously that wasn't new to people. It wasn't something that they couldn't have discovered earlier. Obviously, People East should have known from the get-go whether or not they had fired Mr. Trimble. Well, I think that would have been held against them, right? I mean, just how life works. So the only new thing is that, oh, by the way, we did fire him, right? On the basis of their fighting, asking for summary judgments, we never fired him. They lose, and then they come forward and say, oh, we did fire him, and the judge then flips. In the motion to reconsider, they maintain that, in the written motion to reconsider, they maintain, People East maintains that they never fired him. And they maintain that adamantly even in their reply. It's only orally presented to the court. It's not on the record. The test for a joint employer, well, first of all, when a statute creates liability on two employers, Illinois court has held that, by virtue of being an employer, that joint employer is subject to liability. That's Grishon v. Illinois State Labor Relations Board, and that makes clear that where a statute prohibits retaliatory termination, and there's more than one employer, a joint employer can be subject to liability even without direct involvement. And the dissent emphasizes in Grishon there was no direct involvement whatsoever. Furthermore, there's a test for determining, being subject to liability for a joint employer, the joint employer test, and that also operates regardless of direct involvement. The joint employer test incorporates agency principles to hold that, where a joint employer reserves control over essential terms of employment, particularly the right to terminate, that employer can be held liable for retaliatory termination even without direct involvement, even if it's not exercising that power. In this case, PeopleEase and A&T had a service agreement. That agreement said employees of a client company are employees of PeopleEase, quote, in all respects. It reserved to PeopleEase the right to hire, reassign, discipline, terminate. It gave PeopleEase the right to investigate compliance with anti-discrimination and similar laws. And it gave A&T only the right to seek termination, but it gave PeopleEase clearly the final say in whether an employee was terminated. So we cite in our brief a number of cases where the court holds that that kind of reservation of power over those terms and conditions of employment make a joint employer liable regardless of direct involvement. I do want to highlight one of those cases, Fulton v. PeopleEase, because the defendant is the same, defendant as in this case, and the service agreement from all of the court's quoted provisions is exactly the same. It's the same service agreement that was between the parties in this case. And based on that agreement, the court rejected the very same claim that's made by PeopleEase in this case. There was no direct involvement. We didn't know what was going on. They even made the claim in Fulton that the employee failed to call. And the court said PeopleEase has potential liability under the joint employer test because it retained control over the essential terms and conditions of the assignment to the borrowing employer in that case, including termination. The court therefore reversed summary judgment in PeopleEase's favor in the same kind of claim, a common law retaliation claim and a claim under Title VII's anti-retaliation provision. This court should follow that persuasive reasoning because the service agreement in this case establishes the requisite control to find PeopleEase liable for A&T's termination. The rule that an employer that exercises this kind of control can be held liable makes sense because given the remedial purpose of the Whistleblower Act and the tort of retaliatory discharge, we're trying to protect employees who are at fear of losing their job. An employer who retains that kind of control over termination, that is the power that these torts and these protections for workers is trying to temper. The rule also makes sense because it's consistent with well-established agency principles, such as that the knowledge of an agent is imputed to the principal. In Vorpagel v. Maxwell, Illinois Appellate Court made clear that knowledge for purposes of retaliatory discharge can be imputed to an employer even when it's only the individual agent that has the retaliatory motive. So just like in Gershon where it's only the sheriff that had the retaliatory motive, not the joint employer, the joint employer is still liable. But there was a special statute in Gershon. Was there not to make an accounting board liable as a joint employer? The statute defined it as an employer, just like the Whistleblower Act defines an employer. The court was looking at that definition. So I don't think there's anything about this statute that really distinguishes Gershon from our case because what the court was doing was saying, do we meet the definition of employer? That's all we need to know. If we meet the definition of employer and there's a retaliatory discharge, it's the employer that discharges. That's who has that power. That's who can do that. And so they're the party that's liable. But here this case is up in front of us on summary judgment, right? And you're asking for us in your request for relief, not that we should enter summary judgment for you, even though I think you have a very strong case for that. You are asking us to merely send it back to reverse the summary judgment and have your day in court where they can hash out who's telling the truth and what the truth is. Right. Okay. I'd like to make sure you have five minutes for rebuttal, so if you could conclude. Okay. Thank you, Your Honor. I will reserve the rest of my time for rebuttal, and I appreciate your attention. Very good. Thank you. Appellee. Thank you, Your Honors, and may it please the Court. My name is Lee Laudacena, and I represent the Appellee People's Lease Corporation, or PLC. Before responding to counsel's arguments from opening, I'd like to ask the Court to take a step back and examine counsel's theories of liability against my client. Here today, counsel is alleging two separate theories of liability. First, that A&T is liable for wrongful discharge, and PLC should be liable for A&T's conduct through respondent superior or agency. Second, the PLC should be liable for their own direct conduct concerning the termination of the plaintiff. When the plaintiff filed suit, however, he only pled one theory of liability. The plaintiff did not plead vicarious liability. If you look back at the complaint, there's no count for agency. There's no count for respondent superior. Therefore, the only proper issue before this Court is whether or not People Lease was directly involved in the alleged wrongful conduct. The record answers that question affirmatively. The People Lease had no direct involvement and that A&T acted unilaterally and independently when it fired the plaintiff. Well, you heard my question earlier. This is a summary judgment, right? This case is here on summary judgment. Yes, Judge. What was new that you brought? So the judge denies summary judgment on the case. You filed a motion to reconsider, and what new things did you or your predecessor bring to the Court's attention? Well, there were two things, Your Honor. First, during the hearing on the original motion for summary judgment, the judge invited us to bring another motion to clarify the record regarding this employee discharge form. Because the judge invited us to do it, we supplied supplemental affidavits. However, to adjust the procedural question, summary judgment wasn't granted. The limits on a motion to reconsider deal with when summary judgment is granted and you need to present new evidence before the time expires. There's no limit on the number of times that a party can file a motion for summary judgment or make a dispositive motion. So what was the original ruling of the Court then on the motion? The original motion for summary judgment was denied because the judge explained that she had a question involving this employee discharge form. And that question was answered by the affidavit of Claudine Thurman as well as Deborah Hyatt from People Lease. Claudine Thurman clarified that she created that all by herself. It was not requested by People Lease. It was not a People Lease form. It was not a People Lease document. She didn't ask them about it. The affidavit from People Lease, Ms. Deborah Hyatt, who is in South Carolina and was the People Lease person assigned to this account, she's the same one that had contact with Arista Thurman. She stated she had never seen the form and she was not aware of the form. So did the order of the Court say, my ruling is X, but I have issues about the form? Well, there's no written order. It was just in a world we wrote the order ourselves saying the motion is denied. During the oral arguments, the judge had asked questions about this form and said, I'm not sure who created this, where did it come from, and, you know, asked for clarification about that. In response, we filed these affidavits. But in our briefs below on the motion to reconsider, we also addressed that issue, and we cited a case, the Buffa case. It's in our reply brief to the motion to reconsider in the record, which explains that there's no limit on the number of times a party can bring a motion for summary judgment or a dispositive motion. Well, I would think anybody, especially in a motion call, would know that, I would hope. But also another new thing you brought forward was the admission that PLC did fire Mr. Trimble, right? Yes, Your Honor. When the judge denied it, the trial court denied your request for summary judgment, the position of your client was that we never fired him. And yet when the judge reconsidered and said, oh, it's okay, the new evidence was that, by the way, we did fire him. Is that correct? Yes, Your Honor. We advised the court orally. There wasn't any new paperwork that was submitted regarding a termination. We advised the court orally that, in fact, we realized, based upon the documents that we produced to counsel in the original production request, that, in fact, he was fired separately from both A&T and from PLC. Now, People Lease maintains, because the plaintiff never pled vicarious liability, that all the issues of agency and responding at superior should not even be before this court. The only issue Well, but they need to do that when the issue really is whether or not People Lease is a joint employer, right? And we look at Andrews, the 2007 Illinois Supreme Court case, to decide they lay out the test for what is a joint employer. And among the things we look at is the putative joint employer's role in hiring and firing, promotions, demotions, setting wages, work hours, other terms and conditions of employment, discipline, and also actual day-to-day supervision and direction. In your agreement with the trucking company, A&T, People Lease has the right of direction and control over Trimble, the right to fire him, discipline him, reassign him. You shall have the exclusive right to terminate him, right? Yes, Your Honor. So what are we missing? In Andrews, the court explains that the test for joint employers is whether they share or co-determine control over the essential terms and conditions of the employment. Now, the agreement alone does not mirror the actual relationship between the parties. The agreement itself states that PLC is not the principal of A&T. It cannot be more clear. It specifically says not an agent-principal relationship. Well, again, we have vicarious liability. They're a joint employer. How are they not a joint employer? They're not a joint employer because they didn't follow the fine print of the contracts. And we've cited cases similar to them looking to other states with Fulton. We've cited cases like the Generette decision from Florida, which says even though there is a contract, and that was very similar, they retained the same right to hire and fire, they also in that case said specifically that they were joint employers in the Generette decision. However, the court said the parties didn't follow the fine print. We need to look at the actual relationship between the parties to see if this is something that constitutes a joint employer relationship. Now, here, there's no evidence in the record to suggest that PLC had their hand in the day-to-day operations whatsoever. They're based out of South Carolina. A&T is based out of Illinois. But didn't they fire him as well? They did fire him separately. Well, but they did fire him. Eventually, yes. What happened was Arissa Thurman unilaterally decided to terminate the plaintiff. I don't think there's any dispute about that. He filed an affidavit. It couldn't be clearer. Then, for the transition, I think nothing could be less clear. She flipped on her debt, which happens all the time. We see this routinely. What we don't see routinely is then granting of summary judgment based on a difference in testimony and deposition and veriments in affidavits, like Ms. Thurman did. Because in the affidavit, doesn't she say or the testimony? I called. Actually, it's the husband testifying. My wife told me. It's all hearsay, but as we say in Cook County, we'll let it in for what it's worth. Therefore, it's legal. She told me she called P. Police immediately and called them. And they said, go ahead and fire him. And that's in the record, is it not? To clarify, Your Honor, Arista Thurman testified that he called P. Police after he terminated the plaintiff. And how much time elapsed from the time he fired Mr. Trimble to the time he called P. Police? About five minutes is what he testified to. So later. Yes, five minutes later. He calls P. Police. And he said, I told them what I had done. He refused to go back out. So in P. Police's eyes, the plaintiff was fired for misconduct. Then, per the terms of employment contract, which the plaintiff signed. Now, how many people need to know, do they know the details of this after they took that short a period of time to fire them themselves? How do we know that they knew that? What the actual details was of this firing? As evidenced in the unemployment documents, which is in the record, it explains P. Police's basis for firing the plaintiff a few days later. He was fired for misconduct because he refused to follow the order of his supervisor, which was Arista Thurman. The terms of employment contract, which the plaintiff signed, explicitly states, if his employment is terminated with the borrowing employer, A&T, he is to return to P.L.C. for reassignment and immediately notify them of what happened. He didn't do that here. Is that why P.L.C. fired him five minutes after A&T fired him? Because he didn't call them? He never called and gave them an alternate account of what happened. He both abandoned his right to return to P.L.C. for reassignment. And did the judge rule on all of this, this theory you have, that he's actually fired by P.L.C. five minutes after fired by A&T for failure to notify P.L.C.? Well, we never said it was five minutes after he was fired. But it was five minutes, right, according to Mr. Trimble? Well, no, that was Mr. Thurman. Mr. Thurman told P.L.C. five minutes later that he had discharged the plaintiff. At that time, P.L.C. was waiting for the terms of employment for the plaintiff to come back for reassignment. If the plaintiff did that, he never would have been fired from P.L.C. Are employees given a copy of the service agreement between the two? Between? Yes. The service agreement between A&T and P.L.C.? Right. The record is silent on that issue, but I don't see why. I'm just saying, how would an employee know? Okay, this guy fired me. Now I've got to call this guy to see if he's all right. Because it's in his terms of employment form, which he signed. It's in the terms of employment form, which he signed, saying he returns. And he followed that form, unlike the form between A&T and P.L.C.? Well, the form between A&T and P.L.C. is not privy to the plaintiff. Right, but you followed, you did not follow your argument here. You started with your argument, well, we didn't follow the form at all between P.L.C. and A&T. The service agreement. Neither one of us followed the service agreement, therefore, we're really not obligated to that. But you did follow this form, right? What we're trying to follow is the relationship of the parties and the conduct of the parties. Regarding the service agreement, neither party followed the terms, so what we're asking is to look at a test regarding the actual relationship and what evidence did the plaintiff produce that shows there was a joint employer relationship under the factors of the Andrews decision, which explains share and co-determine the essential terms of employment on day-to-day. And with regard to the plaintiff, that he produced any evidence that P.L.C. had any wrongful conduct. They weren't aware of any alleged safety concern to retaliate. Well, let's go to that then. Okay. Excuse me. You argued a few minutes ago that P.L.C., or whatever you want to call it, did not have any knowledge or they operated on the presumption that Mr. Trimple had violated his duty to go out with misconduct. Yes. Based on his conduct. At page 11 of your brief, you say there is not a single fact in the record to suggest P.L.C. had knowledge of the plaintiff's alleged physical condition or any reason to question his ability to drive on the date in question. Doesn't P.L.C., before they fire one of their employees, in this case Mr. Trimble, have some kind of obligation to call the person, the A&T, and say, why did you fire poor Mr. Trimble? Is there any evidence in record to say, indicate in any manner that P.L.C. asked why A&T fired poor Mr. Trimble? Understood, Your Honor, and responding to that with twofold. First, this isn't a breach of contract case. It's not a duty to live up to the terms of the service agreement. It's a retaliatory discharge case. And regarding their actual knowledge, they did speak with Arista Thurman five minutes afterwards. Arista Thurman told them that he refused to go back out, and that was that. There was no reason for P.L.C. to insinuate there must be something wrong here. It simply wasn't. How about not so they won't get sued, right? So when they fire him based on this conversation of apparently a few words, they then fire him. But we shouldn't be held liable for firing Mr. Trimble, even though we did, because we had no idea why he should be fired other than misconduct. They're under no obligation to ask why did you fire our employee? They did ask, Your Honor, and they were explained that they were fired for insubordination. Now, every time an employee is fired, there should be an explanation. Here, that was misconduct. There was no reason for them to look farther because they knew that their employees are supposed to come back to them and ask for reassignment. But you said P.L.C. didn't fire him for misconduct. You said they fired him because he didn't call you back and ask for his job back or ask to be reassigned. They fired him for misconduct because that was the only explanation they ever had since he never returned. So it was both abandoning his right to reassignment because they understood that misconduct was the only reason. If there was something that shouldn't have happened that went on, if a plaintiff had a real gripe about the way that he was fired, why would he not call P.L.C.? Why would he not call them and complain and say, A&T fired me wrongfully. I said I couldn't do this. This wasn't safe. You know, this isn't right. He never did that. He never spoke up at all. Sounds like you need a trial. We need a trial against A&T, and there is going to be a trial against A&T because they're the active wrongdoer. The plaintiff has a burden to prove that P.L.C. directly did something wrong. He hasn't proved that P.L.C. even knew of an alleged conduct to retaliate for. This is not a breach of contract case. At issue is not whether P.L.C. fulfilled its duties to live up to the terms of the service agreement. What's at issue is whether P.L.C. retaliated for him saying he couldn't drive because it wasn't safe. So on a regular basis with these organizations, counsel, if an organization fires someone and a lesser just goes along and fires him as well, there's no inquiry? Fine. You fired him for misconduct or insubordination. That's great. And then there's no inquiry. Is that how it works? The way it works is that the plaintiff then returns to the employing company, the leasing company, for reassignment. And if something improper went on, when he returns to the leasing company for reassignment, then they would understand what happened and then they can have an investigation or an inquiry regarding the alleged misconduct there. Why would they want to do that? Why don't they just offer him another job? If they were going to do that, why would they investigate A&T, the theory being perhaps they could no longer trust A&T and they should not supply more people to A&T? What's the motive for P.L.C. to do what you said they would have done? Not that there's any evidence in the record that that's what they would have done. The plaintiff isn't necessarily the only employee from A&T that has a relationship with P.L.C. also. P.L.C. places workers at different agencies. And there are circumstances where a client company such as A&T can fire an employee. He can return to P.L.C. for whatever reasons. They don't get along with the boss in subordination as there was here. For some reason, the plaintiff and Arista Thurman didn't get along. That doesn't mean that A&T can't recommend that worker for a job at another facility, another trucking company. You mean P.L.C., right? Excuse me. P.L.C. can't place him with another company to have a relationship with. Now, the plaintiff is seeking to get liability, not even discussing the agency of vicarious liability, through joint employers. No Illinois case has extended liability to joint employers under retaliatory discharge simply because of their joint employer status. P.L.C. maintains it's not a joint employer because it doesn't meet that test described in Andrews. However, the Buckner decision, our Supreme Court specifically cautioned against expanding the tort of retaliatory discharge. There, they tried to use agency to add a new defendant. They said the individual who actually fired me plus the company should be defendants, and the court said no. This is a narrow tort. There's a past precedent against expanding the tort. If you look at the history, the only time the tort was expanded was for new wrongs. Here they're looking to expand it wrongly to add a new party without producing any evidence that that party did anything wrong. The only issue before this court is P.L.C.'s direct conduct, and that direct conduct did not even have a motive or a reason to retaliate. For that reason, the appellee respects the request. This court affirmed the decision below. Thank you, Mr. Laudersen. Thank you. Pellin. You have five minutes. Counsel, I want to ask you first before you start. Okay. On the complaint that was dismissed, was there a count in there for respondent superior or agency counsel? Suggested there was not. There was only a count for individual liability. Well, the complaint does say that A&T was acting within the scope of its authority when it terminated Mr. Trimble from P.L.C.'s. But I don't know the answer to your question directly without looking at the complaint, but this argument is the first time it's been raised. He can't – this is a 2-615 issue, whether the complaint is appropriately pleaded. This is the first time that P.L.C. has raised any issue whatsoever about the complaint being inadequately pled. Thank you. All of these arguments were made in the context – all the arguments that we make in this court we've made in the trial court as well. I also want to say that counsel's argument that, you know, we didn't follow the fine print in the complaint, that is wholly unsupported by the record. People at least have the opportunity below to say, oh, yeah, there is this contract, but nobody followed it, and here's an affidavit that says how that was the case. There's no evidence whatsoever in the record to support a claim that the contract was not followed in reality. And, in fact, Thurman testified, I called up People Lease because I am supposed to, and they gave me the okay. So, in other words, the evidence in the record actually supports that it was followed, that Thurman knew he was supposed to get People Lease's approval before terminating, and that he did that. That's what he was doing. This business of people inspired him at a later date, that is also not reported – that is not supported in the record whatsoever. There's no support in the record that there's any reason for the termination by People Lease other than the same exact incident that A&T terminated him. And, in fact, there's no support in the record for any reading of the facts other than the minute that Thurman called up People Lease and said, I just fired this guy. As far as People Lease was concerned, he was fired from both companies at that point. There's no affidavit, nothing in the record that said, you know, we waited for his call, and after a while he just – that is just a bald statement. But the issue before us is whether or not the grant of summary judgment on behalf of PLC is free of doubt and that there were no material facts in dispute. Isn't that the standard? It's not mentioned in anybody's brief, but isn't that what we're going to cite today? Absolutely. That there is an issue of fact, and we do raise that there's at least an issue of fact. We don't have to prove that we're entitled to judgment here. There's at least an issue of fact that should be tried in this case. Sorry. I would hope that we would have done it. I just wanted to cover this issue that Buckner said don't expand the tort. That's a misreading of Buckner. It was rejected in the Vorpegel case, which we cited in our brief. Buckner said what we want is to focus on the employer. It's the employer that has the power to terminate. That's who has to be a defendant. That's all we want is for the employer to be the defendant here. We're not expanding the tort. Thank you, counsel. Thank you, Your Honor. Thanks to both counsels. Thank you for your excellent argument. The court will take this matter under advisement.